Rev. 3/19

_____ FILED
═══════ LODGED
_____ RECEIVED

**MAIL**

# UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON    JUL 11 2022

Christopher A Frick

*Plaintiff's full name and prisoner number*

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

Plaintiff,

**\*\*AMENDED\*\***

v.

Dr. DY, Jane Doe, John Doe
~~illegible~~ ~~illegible~~,
~~Warden~~ ~~illegible~~, Scotty Russel

*Defendant's/defendants' full name(s)*

See Attached

Defendant(s).

Case No. ___22-cv-801-JHC-MJP___
(leave blank – for court staff only)

## PRISONER CIVIL RIGHTS
## COMPLAINT

Jury Demand?
☒ Yes
☐ No

(If you cannot fit all of the defendants' names in the space provided, please write "see attached" in the space above and attach additional sheets of paper, as necessary, with the full list of names. The names listed here must be identical to those in Section II. Do not include addresses here. **Individuals whose names are not included in this section will not be considered defendants in this action.**)

## WARNINGS

1.      Do not use this form if you are challenging the validity of your criminal conviction or your criminal sentence. If you are challenging your conviction or sentence, or if you are seeking restoration of good-time credits that would shorten your sentence, you must file a Petition for Writ of Habeas Corpus. If you use this form to challenge your conviction or sentence, you risk having your claim dismissed. Separate forms are available for filing a habeas petition.

2.      Under the Prison Litigation Reform Act ("PLRA"), you are required to exhaust all remedies in your institution's grievance system that are available to you before filing suit. This generally means that you must file a grievance and, if it is denied, appeal it through all available levels of review. Your case may be dismissed if you fail to exhaust administrative remedies, unless the administrative grievance process was not "available" to you within the meaning of the PLRA. You are not required to plead or show that you have exhausted your claim in this complaint.

Page 1 of 9

Christopher A Frick

Plaintiff,

v.

AW Green

Counselor Smith

Officer Shultz

~~Sergeant Corporal Lts~~ Carvajal

Inspector Fishclin

~~Lts~~ Warden Jacquez

~~Lts Colonel Superviso~~ Mr. Fernandez

Giles Durano

Officer Flemming

Counselor Behling

Mrs. Egleston

Nicole English

Defendants    1 of 9

3.    Please review your complaint carefully before filing.  If your case is dismissed, it may affect your ability to file future civil actions while incarcerated without prepaying the full filing fee.  Under the PLRA, a prisoner who has had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim cannot file a new action without first paying the full filing fee, unless the prisoner is in imminent danger of serious bodily injury.

4.    Under Federal Rule of Civil Procedure 5.2, papers filed with the court, including exhibits or attachments to a complaint, may not contain certain information, which must be modified as follows:

|  | Do not include: | Instead, use: |
|---|---|---|
| • | a full social security number | → the last four digits |
| • | a full birth date | → the birth year |
| • | the full name of a minor | → the minor's initials |
| • | a complete financial account number | → the last four digits |

5.    You may, but do not need to, send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.  Any documents you submit *must relate directly to the claims you raise in this lawsuit.*  They will become part of the court record and *will not be returned to you.*

---

## I.    PLAINTIFF INFORMATION

Frick Christopher Frick

Name (Last, First, MI) _____ Aliases/Former Names

26587-086

Prisoner ID #

FDC Seatac Pretrial

Place of Detention

P.O Box 13900

Institutional Address

Seattle _____ WA _____ 98198

County, City _____ State _____ Zip Code

*Indicate your status:*

☒ Pretrial detainee ☐ Convicted and sentenced state prisoner
☐ Civilly committed detainee ☐ Convicted and sentenced federal prisoner
☐ Immigration detainee

## II.    DEFENDANT INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint. Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page of the complaint. Attach additional sheets of paper as necessary.*

Defendant 1:    Dr. DY
Name (Last, First)

medical Doctor
Current Job Title

FDC Seatac P.O Box 13900
Current Work Address

Seattle                    WA            98198
County, City            State            Zip Code

Defendant 2:    Jane Doe
Name (Last, First)

Dental Assistant
Current Job Title

FDC Seatac P.O Box 13900
Current Work Address

Seattle                    WA            98198
County, City            State            Zip Code

Defendant 3:    John Doe
Name (Last, First)

Dental ~~Medical~~ Director/supervisor
Current Job Title

FDC Seatac, P.O Box 13900
Current Work Address

Seattle                    WA            98198
County, City            State            Zip Code

Page 3 of 9

Defendant 4:

Counselor Smith
Name (First, Last)

DC Unit Counelor
Current Job Title

24255 200th st
Current Work Address

Seattle            WA            98198
County, City        State          Zip Code

Defendant 5:

Officer Shultz
Name (First, Last)

DB Unit officer
Current Job Title

24255 200th st
Current Work Address

Seattle            WA            98198
County, City        State          Zip Code

Defendant 6:

Scotty Bussell
Name (First, Last)

Clinical Director
Current Job Title

24255 200th st
Current Work Address

Seattle            WA            98198
County, City        State          Zip Code

3 of 9

Defendant 7: Inspector Fischlin
Name (First, Last)

Postal Inspector
Current Job Title

Unknown
Current Work Address

County, city          State          Zip Code

Defendant 8: I Jacquez ~~Jose~~
Name (First, Last)

Warden of FDC Seatac
Current Job Title

24255 200th st
Current Work Address

Seattle          WA          98198
County City          State          Zip Code

Defendant 9: Giles Durano
Name (First, Last)

Health Service administrator
Current Job Title

24255 200th st
Current Work Address

Seattle          WA          98198
County, City          State          Zip Code

3 of 9

Defendant 10:

officer

~~Scott~~ ~~Bossey~~ Flemming
Name (First, Last)

~~Clinical~~ Safety
Current Job Title

24255 200th st
Current Work Address

Seattle.        WA        98198
County, City     State        Zip Code

Defendant 11: MR. Fernandez
Name (First, Last)

unit team Supervisor
Current Job Title

24255 200th st
Current Work Address

Seattle        WA        98198
County, City     State        Zip Code

Defendant 12: Counselor Beihling
Name (First, Last)

Unit DB Counselor
Current Job Title

24255 200th st
Current Work Address

Seattle        WA        98198
County, City     State        Zip Code

3 of 9

Defendant 13: Carvajal
Name (First, Last)

Director of the BOP
Current Job Title

7777
Current Work Address

_____
County, City          State          Zip code

Defendant 14: Nicole English
Name (First, Last)

Senior official overseeir of heath care
Current Job Title

???
Current Work Address

???          ??          ??
County, City          State          Zip code

Defendant 15: Mrs. Egleston
Name (First, Last)

Pill Line nurse
Current Job Title

24255 200th st
Current Work Address

Seattle          WA          98198
County, City          State          Zip Code

Defendant 16: AW Green
Name (First, Last)

Assistant Warden
Current Job Title

24255    200th st
Current Work Address

Seattle            WA            98198
County, city        State            Zip code

## III.   STATEMENT OF CLAIM(S)

*In this section, you must explain what you believe each defendant did to violate your civil rights, and if you know, identify the federal statutory or constitutional right you believe was violated.*

*If you believe the defendant(s) violated your civil rights in more than one way, explain each violation under a different count.  For example, if you believe you received constitutionally inadequate medical care and your religious rights were substantially burdened, include one claim under "Count I" (i.e., medical) and the other claim under "Count II" (i.e., religion).*

*Number your paragraphs.  For example, in Count I, paragraphs should be numbered 1.1, 1.2, 1.3, etc., and in Count II, paragraphs should be numbered 2.1, 2.2, 2.3, etc.  The first two paragraphs of each Count have been numbered for you.*

*If you have more than three counts, attach additional pages and follow the same format for each count.*

*If you attach documents to support the facts of your claim(s), you <u>must</u> specify which portion of the document(s) (i.e., page and paragraph) you are relying on to support the specific fact(s) of your claim(s).  <u>If you do not specify the portion of the supporting document(s), the Court may disregard your document(s)</u>.*

### <u>COUNT I</u>

*Identify the first right you believe was violated and by whom:*

1.1 Dr. DY violated my 4th, 8th, and 14th admendment and created deliberate indifferance to my serious medical needs.

*State the <u>facts</u> of your first claim below.  Include all the facts you consider important.  Be specific about dates, times, locations, and the names of the people involved.  Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong.  If you need additional space, you may attach extra sheets.*

1.2 I saw Dr. DY one time between the months of June and July 2021 for intense abdominal pain and bleeding due to Crohn's Disease flare ups. At which time she prescribed me Prednisone. Prednisone has had adverse affects on my health

due to being overly prescribed by FDC SeaTac and FCI Sheridan in an attempt to control my Crohn's flare ups instead of finding an adequate treatment plan with proper medication. Since July of 2021 Dr. Dy has neglected to attend to any of my medical needs. I have continously sent cap outs to medical expressing my constant rectal bleeding, vomiting, and abdominal pain due to Crohn's flare ups. With the amount of Crohn's flare ups ive had this past year, and based off the amount of blood loss ive had, my blood work should have been monitored. I have yet to even have a blood draw to determine my blood levels after such extream blood loss. Dr. Dy has made no orders for blood draw and has not put me on the call out list for a medical appointment, but yet continues to prescribe Prednisone with no medical follow ups or evaluations what so ever. Its been known by medical and Dr. Dy that I have serious medical needs, Crohn's Disease/Osteoperosis, bone loss, and severe arthritis in both knees and shoulders. In February of 2021 my medical team at Harbor View reccomended that I have an MRI
(see attached)

*State with specificity the <u>injury, harm, or damages</u> you believe you suffered as a result of the events you described above in Count I. Continue to number your paragraphs.*

1.3 The injuries and damages I have sufferd are pain and suffering due to uncontrolled Crohn's flare ups, abdominal pain, constant vomiting, dizzyness, internal bleeding, lack of sleep, and unknown future harm to my intestines due to lack of treatment. Also my inability to
(see attached)

Page 5 of 9

Continued - <u>Count I</u>

(FACTS)   1.2   of my abdomen and pelvis. This was to complete the restaging of my disease, however, this was never done. My clinical team at Harbor View Medical Center made several attempts to contact FDC SeaTac medical services witch all went unanswerd by FDC SeaTac medical. My medical team said that on the FDC SeaTac website that detainees can send emails to health services thru the inmate e-mail box which I have done repeatedly with no avial. The reasons I feel my medical needs are being absolutly neglected are because medical has made no attempts to help me with my pain and suffering during my Crohn's flare ups this past year and also because none of my cop outs or medical request are being answered due to deficiencies in staffing or medical availibility which results in my needs being overlooked. I have had no other way to communicate my medical needs to Dr. Dy or other medical staff. I subsiquently have filed BP-8, BP-9, BP-10, and BP-11 exhausting my administrative remidies.

(HARM) continued

1.3   inguage in normal activities. Also because of the COVID 19 outbreak any underlying medical conditions where not being addressed or evaluated.

## COUNT II

*Identify the second right you believe was violated and by whom:*

2.1 Jane Doe (Dental Assistant) violated my 4th, 8th, and 14th admendment and created deliberate indifferance to my serious dental needs.

*State the facts of your second claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

2.2 In June of 2021, while in custody at FDC SeaTac, I started experiancing pain in my front anchor tooth. This tooth is used to support my partial. After several medical cop outs and several months I was finnally taken down to dental for an X-ray and examination of my tooth. At this time I told Jane Doe that I was having discomfort and pain flashes with this tooth. This tooth is very important because it keeps my partial in place. With out my partial I cannot chew food properly. After the X-ray Jane Doe told me that the reason I was having pain was because, based on the X-ray that she shoued me I had a crack in my tooth that is exposing the nerve. She prescribed me ibuprofen for the pain and told me I would be seen by the dentist soon. Since that appointment I have sent cop out after cop out telling dental that the pain has gotten worse and the tooth has continued to decay, over the past 8 months due to lack of treatment. I have explained

to dental that half of my tooth has now broken off causing me serious pain and making it hard for me to eat and drink. I further explained that my partial will no longer hold in place when I chew. To this day I have still yet to be seen or heard any answer back from my numerous cop outs I have sent to medical and dental.

*State with specificity the <u>injury, harm, or damages</u> you believe you suffered as a result of the events you described above in Count II.  Continue to number your paragraphs.*

2.3 Due to the lack of treatment I have endured extream pain in my mouth and suffering. My partial now moves around while I chew and cuts into my gums causing me to develop soars and even more pain in my mouth. This dental condition also has a

(see attached)

**COUNT III**

*Identify the third right you believe was violated and by whom:*

3.1 Officer Flemming violated my 8th admendment and created deliberate indifferance causing me to be exposed to infectious disease.

*State the <u>facts</u> of your third claim below.  Include all the facts you consider important.  Be specific about dates, times, locations, and the names of the people involved.  Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong.  If you need additional space, you may attach extra sheets.*

3.2 Officer Flemming is in charge of safty, which also means he is in charge of all the chemicals that have to do with disinfecting surfaces. Flemming has failed to refill hand sanitizers during the COVID 19 outbreak in our unit (DB) in January thru March 2021 and was left empty until June 24th 2022. Also the

Page 7 of 9

Continued – <u>Count II</u>

(HARM) <u>2.3</u>    direct affect on my dietary condition (Crohn's Disease).
The inability to chew food properly causes Crohn's
flare ups in my intestinal track which causes pain,
bleeding, and inflamation. Also an inability to ingauge
in normal activities due to my pain and discomfort.

3.2 disinfectant (HdqC₂) per manufactur instructions is only potent for 24 hours after it is pre mixed. Officer Flemming sends four 5gal open air and pre mixed containers to the unit every 2 months. This disinfectant per the manufactuer looses its potentcy 1 day after being pre mixed and stays in the unit for 2 months then how is this hdqC2 disinfectant affectivly cleaning or disinfecting anything.

*State with specificity the injury, harm, or damages you believe you suffered as a result of the events you described above in Count III. Continue to number your paragraphs.*

3.3 Officer Flemming's negligent acts of pre mixing the hdqC2 before it enters the unit and remains in an open air container rendering the hdqC2 inaffective. This means nothing gets disinfected which allows infectous disease like COVID 19 and Mrsa to spread in

(see attached)
→

Page 8 of 9

Continued — Count III

(HARM)  3.3  this institution unchecked. This puts me at a higher risk of exposure to my already comprimised immune system.

## Count 4

4.1 John Doe (Dental Director Superviser), Jane Doe (Dental Assistant), Giles Durano (Health Service Administrator), Scotty Bussell (Clinical Director), and Warden Jacquez violated my 8th acmendment and deliberant indifferance to a serious dental need.

4.2 The presence of a serious dental need maybe based on various factors such as my pain and suffering and the cleterioration of the teeth due to a lack of treatment. The restoration or extraction of painful decayed teeth and the making of dentures for patients who need them to eat property is a serious dental need. The failure of John Doe, Jane Doe, and Warden Jacquez to provid reasonable and reasonably prompt attention for my underlying conditions of a decaying tooth and exposed ~~root~~ nerve and the failure to provide any follow up care has had a direct affect on my ability to eat, sleep, and maintain a proper lifestyle. Giles Derano is responsable for daily running of medical activities and scheduling. Derano should of known of the many cop outs and medical sick call requests that I have sent and willingly choose to ignore or not respond to my medical requests. Scotty Bussell holds altimate athority and is responsable for instatutional care, maintaining records, and evaluating

(continued →)

continued —   Count 4

(FACTS)   4.2  patient care. To which he has done none of those things for me. Scotty Bussell has also faild to hold his medical staff accountable for my medical neglect.

4.3  I belive the 8 month delay in treating my toothach in my face despite my reapeoted complaints and sick call requests should support a deliberet indifferance and the fact since Warden Jacquez, John Doe, and Jane Doe should have known of the pain and discomfort I have been in for 8 months and this should support an inference of actual knowlage by the Warden, John Doe, and Jane Doe. The fact that the tooth is completly broken off and my partial has no anchor to support or hold it in place while I chew food and as a result I have trouble eating and will have to have extensive dental work done, as evidance by the exhibits and medical records I have supplied to the courts will show. Gials Durano's diliberant indifferance as a health care administrator and failure to take responsability for daiky running of medical activities and medical appointment scheduling has caused me to be in sever pain and discomfort with no medical help. Scotty Bussell's deliberant indifferance has caused me to be in continued pain and suffering.

## Count 5

5.1 Counselor Smith, Counselor Behling, UTS Fernandez, and Officer Shultz violated my 8th admendment and created a risk of injury, deliberate indifferance, or blantant disregard for my safty.

5.2 On January 10th, 2022 FDC SeaTac went into COVID lockdown. During this time Smith, Behling, and Shultz turned unit DB into a COVID isolation unit due to the number of COVID 19 positive cases. At this time Smith did several moves. While doing these moves Smith, Behling, and Shultz failed to use reasonable care to avoid a forseeable risk of spreading COVID. They started moving COVID 19 positive inmates from their asigned cells and placed them in the upper teir of the same unit DB. At this time they said they were quarintining COVID 19 positive inmates. They moved inmates that tested negitive from upper teir to lower tier and stright into cells that had just minutes prior housed COVID positive inmates. They knowingly and intentionally moved me from cell 34 on upper teir to cell 29 that had just minutes before housed two COVID positive inmates. Those inmates that were in cell 29 were moved to cell 59 on the upper teir. For example, inmate Craig Jordan #38498-509 was housed in cell 62. A few weeks later they moved inmate Avinger in with Jordan.

(continued →)

Continued — Count 5

(FACTS)    5.2 Inmate Jordan and Avinger were then moved to cell 44. A few days later they were both tested, Avinger tested positive and Jordan did not. Medical staff kept Avinger in the cell for another 5 days before finnaly moving Avinger to cell 52, (see Exhibit 3) away from Jordan. Inmate Michael Wood #32370-086 was in cell 3. Michael Wood tested positive and was immediatley moved to quarintine unit becase he is handicapped and was unable to be placed on the upper teir. They moved his cellmate Creed Colvin #49936-086 into cell 27 with Zachary Buvin. Neither inmate had tested positive for COVID but both had Cellmates who tested positive. Zachs cellmet Mathew Dwinell #40794-086 was moved from cell 14 to Cell 61. However Creed and Zach were just exposed to COVID because they were both just in direct contact with COVID positive inmates and should of been quarintined. They both later tested positive for COVID. As clearly seen, any inmates that did not test positive were put in harms way by not being removed out of the unit into a non COVID infected enviornment. As a result of me being placed in cell 29 and being forced to work in the unit, I contracted COVID 19 between the month of January and February 2022. I was tested for COVID and it came back positive, but I was told to continue working

(continued →)

continued — Count 5

(FACTS)    5.2    as if nothing happend. Officer Anderson was working the DB unit and is my witness that I tested positive. She saw the test, she locked me in my cell, but later that evening shift Officer and Behling told me I had been cleared to work even though I tested positive and even had symtoms and felt sick. I continued to hand out Food, clean, and spread COVID to other inmates at the time. 75% of our unit became infected due to the negligence of Smith, Behling, UTS Fernandez, and Shultz for their failure to follow COVID 19 protocols. Moving inmates that tested negitive into cells that just housed positive inmates cannot be proper COVID 19 protocols. This is the reason why I contracted the virus and why it spread rappidly through the facility. This is gross negligence on the part of Smith, Behling, and UTS Fernandez.

5.3    I believe I was placed in actual inminent substantial harm based on me being forced into COVID 19 living conditions. And as a result due to my serious medical condition or other serious threat to my health or safty and the actual Knowlage of this intent by Smith, Behling, UTS Fernandez, and shulte by knowingly placing me in Cell 29 that had minutes pirror housed COVID 19 positive inmates. As a result I contracted COVID 19 and

(continued —>)

continued — <u>Count 5</u>

(HARM)    <u>5.3</u> also have the symtoms of long term COVID, ie: headachs, shortness of breath, and trouble catching my breath and constant dihareа.

# Count 6

Scotty Bussell, UTS Fernandez, DT:PY,

6.1 Warden Jacquez, Carvajal (Director of BOP), Grials Derans, AW Green, ~~Scotty Bussell~~ Counselor Smith, Counselor Behling, Nurse Egleston, and Nicole English violated my 8th admendment and deliberate indifferance to a serious medical and dental need.

6.2 Warden Jacquez is allowing staff under his control to continue to ignore COVID 19 protocols and is allowing COVID 19 to take presidance over my existing medical needs. One of the examples is of the Warden's negligent acts is allowing the FDC staff under his control to bypass the COVID screening at the entrance of FDC SeaTac. According to Shelly Little during one of her visits to FDC SeaTac her and her family observed officers bypass the COVID screening at the entrance of FDC SeaTac. She witnessed officers on multiple occasions just walk past the temperature check or use their fingers or wrists to bypass the scanner instead of taking a temperature reading as directed per policy and COVID 19 procedures that are put in place to protect the inmate population from avoidable exposure to COVID 19. Warden Jacquez was under criticism because of how FDC SeaTac was unable to stop the continuous spread of COVID 19 on multiple occasions in this facility. Warden Jacquez swore to Chief Judge Martinez in a letter, that SeaTac officers were being

(continue →)

Continued — <u>Count 6</u>

(FACTS)   6.2 properly temperature checked before they entered the insitution. The lack of accountability of Warden Jacquez and his staff to keep us inmates safe and free from avoidable exposure to COVID 19 is obvious. If the officers continuously bypass the COVID 19 screening at the enterance of FDC SeaTac to keep the inmates safe, then how am I and the inmate population being protected from officers bringing COVID into the insitution. The COVID outbreak that continuously happends here are freakishly familiar to one incident that happend at this same facility in August of 2020. While under Warden Jacquez authority (attached as Exhibit 4) is an article writen by Luna Reyna. According to imate Oscar Humberto Carrillo, on August 12, 2020, C/O Seward arrived for his shift exhibiting signs of sickness. When asked by inmates if he was alright, he explained that he had a headach, was hot, and was not feeling well. During this period, C/O Seward made his rounds throughout the entire unit regularly. It was reportaded that C/O Seward was wearing his mask half way off his face, exposing his nose and mouth. According to Salcedo, by 6pm, C/O Seward requested to be seen by medical staff, had his temperature taken, and was confirmed to have a fever. Afterward, he remained at the facility and carried out his entire shift. According to Warden Jacquez

(continued ⟶)

Continued — Count 6

(FACTS)    6.2 own written letter to Chief Judge Martinez in April, FDC SeaTac was conducting regular temperature checks and screenings of all its staff prior to allowing them entry into the institution. According to inmate Salcedo, C/O Seward was not sent home as per the current cronavirus protocols. C/O Seward either bypassed the temperature screening, or was never tested as Warden Jacquez claimed in his letter to Judge Martinez. The bypassing using fingers or wrist has been reported around February 2022 by a visitor "Shelly Little" (Ph# 425-248-9957). This shows a blantant pattern of negligence to have the same type of unmanaged COVID outbreak in this facility as one year earlier. I have attached copies of these incidents reported by the free press and attorneys involved in these incidents (Exhibit 5). This shows the unwillingness to follow policy put in place by the CDC to prevent the spread COVID 19 in our facilities and it shows the willingness of the BOP officols to cover up the issues at hand. As stated before Warden Jacquez, Scotty Bussell, Gials Derano, Behling, Smith, and UTS Fernandez should have been aweer that the polocy's in place by the CDC does not reccomend moving inmates that test negitive with COVID 19 to cells, that just (minutes) prior housed inmates that tested positive for COVID 19. Jaquez, Scotty Bussell,

(continued →)

continued — <u>Count 6</u>

(FACTS)    6.2  Giles Derano, Behling, Smith and UTS Fernandez cannot say they followed any guidelines but their own. The conditions I have been forced to live in here at FDC SeaTac with active Crohn's disease and a broken painful tooth this past year are unconsentutional. Because of the neglect of Behling, Smith, and UTS Fernandez there were times during the lockdowns that I wasn't given toliet paper. When I asked Behling or unit officers I was told its above their pay grade or they didn't have any to give. Because of these actions by Smith, Behling, unit officers, and the Warden I had to use pieces of t-shirt to wipe after bloody dierea. I sometimes use the bathroom 10-15 times a day due to my Crohn's. To not have a basic need such as toliet paper being met is a Knowing deliberate indifferance to my medical needs and standard immate needs. There were times during this lockdown that I did not recive a shower for up to 4 or 5 days until they implamented a shower plan. So not only did I not have toliet paper, I was prevented a shower to get clean. In our current lockdown we have not had any linnen exchange such as sheets and blankets for over a month due to staff sortage. Inmates here at FDC SeaTac, myself included, were bribed into staying quiet about incidents that have happened and

(continued —>)

Continued — <u>Count 6</u>

(FACTS)   6.2  we were bribed to get the vaccine. Warden Jacquez, UTS Fernandez, Behling, smith, and AW Green were using the COVID threat of lockdown as a means for inmates, myself included, to get vaccines. We were told we would get more time out, one special social visit if we reached the 98%. Only then would the unit be totally open and lost privlages would be restored. We would not have as many constant lockdowns and we would also get another t.V in our unit. You have to consider that most of us here have had a long history of insufficiant medical treatment, even medical neglect and abuse at the hands of the very same people we are expected to trust to vaccinate us. Then let alone trust them to keep the promises Warden Jacquez, smith, Behling, UTS Fernandez, and AW Green have made. My wife, Jamie Frick, has also mentioned how the hardships here at FDC seaTac has affected visiting, and the fact that she herself has witnessed officers bypass the temperature screening and just walk into the building with no checks what so ever. So how is anyone being protected from the spread of COVID in this facility. Due to all the COVID outbreaks my contact with my attorney has been at a minimum. For example we have been locked down since the 24th of June

(continued →)

continued — Count 6

(FACTS)   6.2   2022 till current date. I have had no access to my attorney, no attorney visits, or any other way to contact my attorney other then a letter. Attorney Emily Gause has reported in the past that communication road blocks between her and her clients exsisted even before the most recent COVID outbreaks. There are several incidents that could shock and awe the public. For example Wood vs. USA ET AL 2:22-CV-00636-DGE-DWC. Wood has also filed a law suit against Warden Jacquez, AW Green, Scotty Busell, and Giles Derano, (see Exhibit 6) which is a letter FDC SeaTac Warden Jacquez wrote to congressmen Derick Kilmer. In this letter Warden Jacquez specifically states the facts as follows: On October 13th, 2021 inmate Wood colapsed and was found unresponsive in the day room in his unit DB. The inmate has a prior history of substance abuse. The inmate was provided a close of Narcan and he became responsive to staff within 4 minutes. The inmate was sent out by ambulance to the emergency room for further evaluation. It was "suspected" that the inmate might have overdosed while in his unit. The inmate returned from the emergency room later that evening and medical staff took inmate Wood's vital signs, and were normal. (Exhibit 7) Is the

(continued →)

continued —   Count 6

(FACTS)   6.2   toxicology (blood draw) taken at the hospital October 13th, 2021 when inmate wood supposedly overdosed. As you can see in Exhibit 7 all panels for any drugs were negitive. Inmate Wood did not overdose on anything ~~as warden~~ contrary to what Warden Jacquez stated in his letter to congressmen Kilmer. The hospitals reports attached as Exhibit 7 shows he was diagnosed as having Cardio Syncope. Blood tests also showed he had a high Neophil count which is consistant with cancer, trauma, and or major infection. Inmates Woods CBC differental panel was abnormal also which later reveled he has stage 3 cronic Kidney disease. This matters for several reasons. Has Warden Jacquez, Scotty Bossell, and Giles Derano no decieded the proper pootocol is to use Narcan on anyone that may have a medical emergency or that are unresponsive with out first determining if that person has truley overdosed. Scotty Bossell and Giles Derano should be qualified and employ proper staff here at FDC seaTac that have the abisity to make the correct determination before deploying the use of Narcan. Warden Jacquez has already been caught lying to Judge Martinez about how officers were doing proper tempature checks and screening for COVID19 before entering FDC seaTac for their shift. Furthermore lying to Congressmen Kilmer in regards to inmate   (continued →)

Continued — Count 6

(FACTS)   6.12 Woods medical incident. And once again on August 27, 2020 when inmate Jesus Perez was granted a 90 day home confinment TOR, but Warden Jacquez never released Perez from FDC SeaToc custody (see Exhibit 8). This shows the pattern of deciet Warden Jacquez has continued to follow. Secondly, what is not mentioned in Jacquez's report of the Woods incident on October 13th, 2021 is the fact that medical responders used a defibulator, crushed asprione, and chest compressions to revive inmate Woods. Maybe that is what actually revived Mr. Wood as the hospital reports supports, and not the unnessesary use of 3 doses of Narcan. This is further evidenced by the toxicology report being negitive for any type of narcotics in inmate Wood's lab results and UA. This once again shows, the willingness to lie and manipulate and falsify reports and the facts by Warden Jacquez, Aw Green, and Giles Derano. The inmate population is not safe if this progressive pattern is alowed to continue. There needs to be some accountability in order to protect me and the inmate population. The inmate Wood's case is only one example of the many issues arising from the lack of medical care here at FDC SeaTac. And the failure of Jacquez, Green, Scotty Bussell, Giles Derano, Smith, Behling, and Fernandez to follow proper CDC protocols (continued →)

Continued → <u>Count 6</u>

(FACTS)  6.2  regaurding the COVID 19 outbreak prevention procedures and the failure to treat my pre existing medical conditions. (see Exhibit 5). The fact that already existing health care, dental care, and cronic conditions are not being treated as well by Scotty Bussell, (clinical Director) and Giles Derano (Health Care Administrator) and Dr. Dy, and there underlying staff because COVID 19 takes presidance over all existing conditions. Another example that shows the continued negligence of Nurse Egleston, Scotty Bussell, and Giles Derano is (Exhibit 12) on 5/19/22 a cop out was sent to medical by inmate Bryce Ebert, because Nurse Egleston gave inmate Bryce Ebert #15562-031 the wrong medication. Mr. Ebert promptly sent notice to medical about ingesting the wrong medication and he has yet to recieve any reply from medical staff. The most disturbing fact of this incident is that Nurse Egleston told inmate Ebert to keep it their little secret. Also, once Mr. Ebert reported the incident notting has been done by medical to check on him, no wellness check, and no response to the medical cop out Mr. Ebert sent. Inmate Kyle Williams # 17665-026 who witnessed and overheard the incident also wrote in his handwriting what he witnessed happen that day on 5/19/22 at pill line. All of the issues disscused show a gross negligence and safty

(continued →)

Continued — Count 6

(FACTS)    6.2  issues to all of us housed here at FDC SeaTac. On 5/25/22 another incident involving the same Nurse Egleston and Mr. Ebert, I have attached a copy of the cop out (Exhibit 12B), that Mr. Ebert sent to medical. In short it states that Nurse Egleston was negligent when she gave Mr. Ebert once again someone eles medication only this time it was "KOP" which is short for Keep on person medication and because Mr. Ebert was already afraid to accept medication from Nurse Egleston, he was able to catch this before he took possession of it. It is a 100 seiris write up to get caught with another inmates medication so not only was Mr. Ebert put at risk of posibly ingesting medication that was not prescribed to him putting his health and life at risk. Nurse Egleston could have cost Mr. Ebert good time cridets and up to 120 days in the shu for having another inmates medication. Mr. Ebert has recived no reply to either issue as of 7/07/22 from medical or administration. They have also yet to check on his health. when COVID 19 hit the Federal Beauro of prisions last year the senior offical responsable for overseeing health care and safty in all of the more than 120 prisions including FDC SeaTac was Nicole English, a career corrections officer with a graduate

(continued →)

continued — Count 6

(FACTS)   6.7  degree in public administration, she had absolutly no health care experiance what so ever. It is because of her lack of experiance and inability to manage the COVID 19 outbreaks and medical issues thats how the pandemic became out of control. As a result I have sufferd the trickle down affect because the lack of experiance caused COVID 19 prevention protocols from being followed correctly under her direction here at FDC SeaTac. Because of the lack of proper COVID 19 protocol here at FDC SeaTac Warden Jacquez, AW Green, Scotty Bussell, Giles Derano the COVID 19 outbreak was unmanaged and out of control. Because of that my underlying medical conditions (crohn's Disease) and dental issues and the pain and suffering from this has been continuously reglected. The lack of handling of the COVID outbreak here at FDC SeaTac is further evidance by Rep Sheila Jackson Lee when she asked Carvajal during the congressional hearing what to do about preventing the spread of COVID 19 in federal prisions. Carvajal replyed by saying we have been in lock step with the CDC from day one. "We are following the CDC guiedlines" "We do everything in collaboration with the CDC! This is a flat out lie by Carvajal FDC SeaTac and the BOP is and was under fire for the

(continued →)

Continued — Count 6

(FACTS) 6.2 lack of following CDC protocols and the prevention of the spread of COVID 19 in its facilities. In return it has caused COVID 19 to run rampant thru FDC seaTac. With no proper potocols in place to prevent further spread.

6.3 I believe its the willfulness of Warden Jacquez, AW Green, Grails Derans, Carvajal, Scotty Bussell, Smith, Behling, and Dr. Dy here at FDC to continue with reckless abandon neglect protocols, proper procedures that are set in place by the CDC to keep inmates safe from harm are being continuously ignored or not implemented. This has a direct affect on my life and living conditions here a FDC seaTac. Furthermore it has allowed an infestation of medical neglect to my serious medical and dental conditions and has caused these conditions to go untreated. The Continued mishandling of the COVID 19 outbreak of the formentioned defendants has caused the conditions in which I am forced to be confined in to be considerd draconion to be punitive and cruel and unusal. This has caused me to suffer in pain and have emotional disdress and the inability to preform normal dialy functions.

Count 7

7.1 Inspector fischlin violated my 4th and 14th Amendment and my 8th Amendment.

facts

7.2 Agent fischline had lied on multiple occassions in the search warrant affidavit and because of these lies my 4th and 14th Amendment Rights are being violated because he had no Probable Cause when Probable cause is based on false information it renders Probable cause invalid, Because of this I have been subject to cruel and unusual punishment while being in-corcerated on this charge. I should not be held on this Charge due to the Probable cause being based on lies. Also the fact that agent fischlin Knowlingly and

intentionally lied on the
search warrant affidavit

See Attached Further
Conclussions by Frick

7.2

hearing.

DATED this 7th day of April, 2022.

                    /s/ PAULA T. OLSON
                    PAULA T. OLSON, WSBA #11584
                    Attorney for Defendant Christerfer Frick
                    Law Office of Paula T. Olson
                    4020 North Vassault St.
                    Tacoma, WA 98407
                    PH:  (253) 777-5716
                    olsonlaw@nventure.com

                    /s/ John Sheeran
                    JOHH SHEERAN, WSBA#26050
                    Attorney for Defendant Christerfer Frick
                    Law Offices of John Sheeran
                    705 So. 9th St.
                    Tacoma, WA 98405
                    PH: (253) 468-9794
                    John.sheeran327@gmail.com

### FURTHER CONCLUSION ADDED BY DEFENDANT FRICK

There are far too many obvious discrepancies in both the affidavit and the Court's order to denying the Motion to Suppress, and a *Franks* hearing is warranted. The Court erred when it found probable cause outside any statements made by Edwards ( page 6 Order Denying Motion to Suppress line 12.). In its determination, the Court refers to a single text message that read "So did you find out that i did put those in the mail for you and didn't steal them."

Outside of Edwards' allegation that this text pertained to drugs, there is no independent basis for this assertion. In fact outside of Edwards' statement, there is no independent evidence the text was to Frick. There are several other examples that indicate that the affiant

DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING FRANKS HEARING AND MOTION TO
SUPPRESS EVIDENCE  – Page 10

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

7.2

withheld or misrepresented information to mislead the Magistrate Judge into allowing for probable cause:

1. This text was ambiguous, unacknowledged, and could have meant any number of things especially considering that Mr. Frick owns a business which involves mailing graphics and vinyl products. Additionally, the fact that this particular text message was never replied to indicates that it was accidentally sent to Frick, or was sufficiently insignificant for him to acknowledge. The text does not infer meaning consistent with the affiant's claim of probable cause, with or without Edwards' allegation in which the affiant was obviously aware that Edwards was strongly incentivized to say anything to lessen or avoid prosecution. It was known to the affiant that Edwards had a substantial history of fraudulent tendencies especially regarding honesty toward law enforcement. This text also substantiates a belief that even the recipient of the text had reason to mistrust Edwards.

2. The government claims 300 text messages were reviewed but does not supply any other texts that can corroborate that any conversations between Edwards and Frick were about drug trafficking or package mailing.

3. The investigators had Edwards' phone, so if the government had any other messages other than this one message sent by Edwards, it would certainly have mentioned them in the affidavit. The fact that the affidavit does not do so supports Mr. Frick's argument that this text message was not meant for him, and that if it was meant for him it was not drug transaction related. The government cannot say this one single message was a positive communication between Edwards and Frick, or that they were communicating about drug trafficking when there was no reply from Mr. Frick. To conclude the two were communicating regarding drug

DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING FRANKS HEARING AND MOTION TO
SUPPRESS EVIDENCE – Page 11

LAW OFFICE OF PAULA T. OLSON
4020 North Vassault Street
Tacoma, Washington 98407
(253) 777-5716-Tel

7,2

transactions Mr. Frick would have had to reply to this message or at least acknowledge the message. In conclusion, the government cannot say this text message alone from Edwards is Frick and Edwards discussing drug trafficking, and without Edwards' statement telling the agents that this message was about packages or drugs, there is no way the agents could assume this message was about drug trafficking and claim it supported a finding of probable cause to search Frick's residence. The Court noted "reading these texts did not require any interpretation by Edwards or reliance upon his interpretation of their content" ( page 8 line 2 ) is absolutely incorrect. There were not multiple "texts" as implied by the Court by using the word "texts" there was only one "text" mentioned and especially since there was no reply, it was absolutely necessary for the message to be interpreted by Edwards to determine the meaning. There is no other evidence or indication to show this one text message was about packages containing drugs.

The Court also noted, "During the investigation, agents repeatedly saw Edwards mailing packages containing drugs" (page 6 paragraph 18). The video evidence and statements made by Edwards further supports Frick's arguments regarding Edwards' false statements to police, that he is an unreliable source. Edwards told police in his recorded statement that the least number of packages he mailed for Frick was ten and the most was 38. However in the search warrant affidavit submitted to the Magistrate, reports by the Post Office employees, and the videos of Edwards dropping off packages have Edwards dropping only two packages at one point, and six at another, and eight on a third occasion, each incident being less than ten and none of them being 38. The observations of the agents, and their investigation totally contradicts Edwards own statement to police. This should have

DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING FRANKS HEARING AND MOTION TO
SUPPRESS EVIDENCE – Page 12

LAW OFFICE OF PAULA T. OLSON
4020 North Vassault Street
Tacoma, Washington 98407
(253) 777-5716-Tel

made clear to the investigators that Edwards was lying which further damages his credibility. The affidavit for the search warrant should have included this discrepancy. Additionally, the failure to corroborated Edwards statements by independent police observation or investigation is fatal to a finding of probable cause.

Had the magistrate judge been aware of the video evidence that contradicted Edwards' statements to police, Edwards' specific criminal history including fraud and lying to police, and his sworn statement, the warrant could not have been reasonably justified by the magistrate. This Court cannot say that there was probable cause outside any other independent corroboration, because there was none. Further, it is never mentioned in the affidavit that Mr. Frick has a vinyl printing and cutting business and Edwards had worked for Mr. Frick from time to time in Seattle as well as Frick's home in Stanwood. Any reasonable investigation would have lead the investigators to learn there were times that Frick had Edwards mail packages containing graphics that were ordered by customers. Therefore, the government cannot say that the packages Edwards mailed for Frick ever contained drugs, there is no proof at all that that is the case. Additional exculpatory evidence of this is mentioned via text messages from Edwards and Frick that the affiant was definitely privy to; but, was obviously omitted by the affiant.

The packages found at Edwards' residence further demonstrates that Edwards was not truthful. Investigators found 4 packages under the couch that were sealed, as shown in the investigators' own photographs (including an actual photo of an investigator in the process of opening a package). These packages were then opened by the investigators and contained no drugs. Therefore, Edwards' story that he received those packages from Mr. Frick and opened

DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING FRANKS HEARING AND MOTION TO
SUPPRESS EVIDENCE – Page 13

**LAW OFFICE OF PAULA T. OLSON**
**4020 North Vassault Street**
**Tacoma, Washington 98407**
**(253) 777-5716-Tel**

7.2

and consumed the drugs inside is false. The packages were found sealed, then opened and found to have no drugs contained therein! How did Edwards get the drugs out of them without opening them? If he was telling the truth about getting packages from Frick containing drugs, the unopened packages would have contained drugs. The fact that none of them contained drugs contradicts Edwards statements, further destroying his credibility. In the search warrant affidavit, ~~the investigator~~ Agent f. schlin said that the controlled buy parcel mentioned in paragraph 34 of the affidavit was the corroborating evidence to support Edwards statements. This does not support the necessity to establish probable cause before issuing the warrant, nor does it comply with the requirements of the Fourth Amendment to provide an accurate location and descriptions of items to justify that Oath or Affirmation. In the affidavit the affiant ∧ Agent Fischlin stated that the controlled buy parcel (the parcel addressed to Mr. Holdem, the only priority parcel found) was found opened and empty and that package alone corroborated Edwards' statement that he opened and consumed the drugs inside; and, that is how he knew they contained drugs. This statement is absolutely misleading and is not true at all. The investigators admit in the photologs that the controlled buy parcel referred to in the affidavit that corroborated Edwards statement was in fact found unopened and then opened by detectives on scene and still no drugs were found inside. This contradicts what was written in the search warrant affidavit. By Inspector Fischlin Had the magistrate judge been aware that Edwards statement in regard to this package was not corroborated and was found to be untrue, the magistrate would not have issued the search warrant for Mr. Frick's residence. All of these facts should have been presented to the magistrate, but they were not. It is clear that the affiant withheld information about Edwards' history of crimes of dishonesty in an effort to lead the magistrate to believe Edwards statement, that investigators

DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING FRANKS HEARING AND MOTION TO
SUPPRESS EVIDENCE – Page 14

LAW OFFICE OF PAULA T. OLSON
4020 North Vassault Street
Tacoma, Washington 98407
(253) 777-5716-Tel

7.2

had found the controlled buy package opened and consumed by Edwards. Additionally to corroborate Edwards' false statements about knowing there were drugs in the package because he opened and consumed the drugs from the package; yet, when they opened the packages, this was found to be untrue and the investigators were very much aware of this when they submitted this false information in the search warrant affidavit.

On page 8, line 25 of the government's reply, the government attempts to dismiss the photo log note that the "unopened" (describing the envelope in photo 48) is "clearly an innocent mistake," is erroneous at best and may be downright misleading. Pictures 48-51 clearly indicate a distinction between unopened and opened envelopes. What is clear is that the affiant attempted to misrepresent and obscure the evidence and mislead the Magistrate in the acquisition of the warrant.

Page 18, line 13 of the Court's Order calls the underlined, emphasized word "unopened" a "minor mistake" when it is (a) clearly not a mistake, (b) underlined for emphasis, and (c) not minor; since, the entire argument of credibility of Edwards hinges upon him lying about the contents of the package. How does NOT finding any drugs in unopened packages somehow create probable cause in this case?

Page 10, lines 1-5 of the Court's Order fails to note the difference in physical condition of the envelopes in Exhibit 2 and the same envelopes being ripped and bent in Exhibit 4. In fact, the Court seems to willfully ignore the difference in conditions clearly shown in the photos.

A single, unacknowledged text does not constitute a "discussion." If anything, this should be considered a statement by an unreliable suspect. It is not a "discussion," it is an

DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING FRANKS HEARING AND MOTION TO
SUPPRESS EVIDENCE – Page 15

LAW OFFICE OF PAULA T. OLSON
4020 North Vassault Street
Tacoma, Washington 98407
(253) 777-5716-Tel

7.2

unacknowledged text to a phone number. Without Edwards' assertion that the phone number belongs to Frick, therefore, from the standpoint of the investigator, it is only an uncorroborated statement made by an untrustworthy suspect, caught committing a serious crime (that he is videotaped committing), making statements with an obvious vested interest in deferring blame or to avoid consequences for his crime.

The connection the between Edwards and Frick was not made independently of Edwards' statement. Proof is P6 L 4-6 of Government's response. Without Edwards unlocking his phone and asserting that message recipient is Frick, there is no probable cause.

There are far too many discrepancies in the affidavit and the Court's decision NOT to warrant a *Franks* Hearing.

DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING FRANKS HEARING AND MOTION TO
SUPPRESS EVIDENCE – Page 16

LAW OFFICE OF PAULA T. OLSON
4020 North Vassault Street
Tacoma, Washington 98407
(253) 777-5716-Tel

~~Cause~~ Harm

7.3

Because of Agent Fischlin lying ~~on~~ and omitting certain facts on the search warrant affidavit I have suffered cruel and unusual punishment while being incarcerated on this charge. My medical and Dental needs are being neglected I have been left to suffer in Pain. This probable cause is totally based on a lie and if probable cause is based on a lie it not valid and because of this I have been subjected to abuse at the hands of FDC Seatac And the staff named in the lawsuit.

Case 2:22-cv-00801-JHC-SKV    Document 13    Filed 07/11/22    Page 46 of 54

LOGGED
RECEIVED
MAIL

JUL 15 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

22 - CV - 801 - JHC - MLP ①

## Count 8

8.1 This is a Monell claim and deliberate indifference by Warden Jacquez, Scotty Bussell, Giles Durano, and BOP.

8.2 On March 13th, 2020 the BOP implemented the covid 19 action plan. This plan modifys its operations in response to the COVID 19 Pandemic. This policy overides existing policys that were in place to safeguard the inmate population by providing healthcare and safety. The new policy instructs that all new detainees be tested for COVID 19 in the Sallyport before coming into the institution. In March 13, 2020 when the new policy was implemented I was not in BOP custody. At the time of my arrest and while being brought into this institution I was cuffed and shackled and restrained by marshals. The BOP medical employee without consent or even an explantion that he was about to COVID 19 test me, assaulted me with the COVID 19 q-tip test resulting in a bloody nose. This test takes 25 minutes for results, by that time you are already in the booking process. If you are COVID 19 positive, you have already exposed everybody in booking. Because BOP staff didn't even ask my permission or notify me that a test

(continued



continued — <u>Count 8</u>

(FACTS) <u>8.2</u> was going to be preformed, and they did not give me the option to refuse the assoult on my body. The new policy for arrival of inmates instruts that all inmates are to be quarinted for 21 days when entering into BOP custody. This policy overlaps policy 5290.15 the intake screening 7(a)(2) that requires foll medical screen and labs be done with in 14 days of new comits. This institution has adopted a standard or practice of maintaining operations while understaffed which as a results positioned ungualified staff in Reciving. I was sent to quarinten for almost a month without curcess ~~add~~ to the medical or sick call system. Which is in direct violation of policy 5290.15 which is in place to screen for any medical needs. Since I have been in custody I have been stuck with serious pain and life threatoning conditions without consolt. The BOP action plan also instruts that all sick call complaints get screened and cataggrized as urgent and non-urgent. However the BOP programs statement in the BOP handbook signed by Warden Jacquez on page 209 spicifically says that sick call is a first come first serve system <span>(continued →)</span>

Continued - <u>Count 8</u>

(FACTS) <u>8.2</u> You are also not required to give a detailed account of why you need to be seen. Any and all sick call request I have submited are getting discarded and not schedaled per programe statement. The deliberant indifference was confirmed when Dr. Py prescribed prednisone knowing I was sick and asking to be seen, but no appointments were ever made. And once again when dental did the x-ray on my tooth and told me that I was expiriancing pain due to my exposed nerve, but never scedualed me any other appointment in the past 8 months knowing I was in pain and disregarding all my electronic cop outs and sick call requests asking to be seen. This caused my serious medical conditions to go untreated and diagnosed to the point it has progressed rusulting in further tooth decay, cracking, chipping, and increased pain. And my crohns desiease flare ups, vomiting, and rectal bleeding to go untreated. BOP policy for airborn and infectious disease requires that all staff that might risk exposer or being exposed are to be provided N95 or HEPA masks that are of correct size and fit. All inmates that are put at risk of exposer are also required (continued →)

continued — <u>Count 8</u>

(FACTS) <u>8.2</u> N95 or better PPE masks. It is a consitutional violation to not provide safty to heath or life of an inmate in custody due to cost. The BOP has adopted a standrd of cloth or canvas masks for inmates and staff who freely travel thruout the insitution spreading COVID 19 reckelessly disreguarding any thaughts of my safty and health. The BOP and Jacquez did not commit the violatiens he became responsible for them when he failel to correct them in the course of his supervisory responsibilitites. The BOP and Warden Joigez as being and holding ultimate policy making pawers Scotty Bussell, Giiles Durano are responsible fer the overall heealth ear and aetivies at this Institution. All deferants named in this count have mode policy's and adopteel unconsitutiencl standrds.

"Injury"

(HARM) <u>8.3</u> COVID 19 infeotion, bloody nose, assult, failure to treat serious medical needs, teeth loss, and serious dental pain, and lack of any medical response to sick call requests,

## IV.    RELIEF

*State exactly what you want the Court to do for you.  For example, you may be seeking money damages from an individual defendant, you may want the Court to order a defendant to do something or to stop doing something, or you may want both kinds of relief.  Make no legal arguments.  Cite no cases or statutes.*

I seek a Preliminary injunction allowing me to be released to home Confinement and to recieve medical care 10,000,000 in Compensatory damages and 50.000,000 in Punitive damages

## V.    SIGNATURE

*By signing this complaint, you represent to the Court that you believe the facts alleged to be true to the best of your knowledge, that you believe those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.*

7-7-2022

Dated                                                    Plaintiff's Signature







FEDERAL DETENTION CENTER
NAME: Chris Frick
REG: 26587-086 UNIT: D3-2
P.O. BOX 13900
SEATTLE, WA. 98198-1090

Case # C22-801-JHC-MLP

Legal
mail

FILED
LODGED
RECEIVED
MAIL 13 JUL 2022 PM 4 L

SEATTLE, WA 980

FOREVER / U

JUL 15 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

Clerk, United States District Court
United States Courthouse
700 Stewart Street, suite 2310
Seattle, WA 98101

98101-444285

JUL 13 2022

**FEDERAL DETENTION CENTER**
**2425 SOUTH 200TH STREET**
**SEATAC, WA 98198**

THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING PROCEDURES FOR FORWARDING TO YOU. THE LETTER HAS NEITHER BEEN OPENED NOR INSPECTED. IF THE WRITER RAISES A QUESTION OR PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN THE MATERIAL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE WRITER ENCLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.