UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER FRICK,

        Plaintiff,

V.

DR. DY, et al.,

        Defendants.

Case No C22-801-JHC-MLP

**THIRD AMENDED COMPLAINT**



**ORIGINAL DEFENDANT**
**DEFENDANT INFORMATION**

Defendant 1:  J. Parker
                Chief Dentist
                2425 south 200th st
                Seattle, WA 98198

Defendant 2:  Dr. DY
                Medical Provider
                2425 South 200th st
                Seattle, WA 98198

Defendant 3:  Counselor Smith
                DC Counselor
                2425 South 200th st
                Seattle, WA 98198

Defendant 4:  Counselor Beihling
                DB Unit Counselor
                2425  200th st
                Seattle, WA 98198

1

Defendant 5:    Fernandez
Unit Team Supervisor
2425 South 200th St
Seattle, WA 98198

Defendant 6:    Israel Jacquez
SeaTac  Warden
2425 South 200th st
Seattle, WA 98198

Defendant 7:    Scotty Bussell
Clinical Director
2425 South 200th St
Seattle, WA 98198

Defendant 8:    Giles Durano
Health Care Administrator
2425 South 200th St
Seattle, WA 98198

## PROPOSED ADDED NEW DEFENDANT'S INFORMATION

Defendant 9:    Kevin Polsalski
Acting Health Service Administrator
2425 South 200th St
Seattle, WA 98198

Defendant 10:   T. Thomas
Health Service Administrator
2425 South 200th St
Seattle, WA 98198

## STATEMENT OF ORIGINAL CLAIMS

## COUNT 1

1.1    Dr. Dy, violated plaintiff's 5th Amendment rights, resulting in deliberate indifference to his

serious medical needs.

2

1.2    Dr. Dy, violated plaintiff's 5th Amendment rights, resulting in deliberate indifference to his serious medical needs, by prescribing plaintiff prednisone for his Crohn's disease flare ups between June 2021- August 2022 and failing to acknowledge or monitor its adverse effects on his health. Additionally, Dr. Dy failed to schedule any fallow up appointments or Lab work to evaluate plaintiff's conditions and other health concerns created from the use of prednisone and lack of medical treatment for his chronic Crohn's disease flare-ups. Plaintiff was denied any standard of care even though he has serious medical needs.

1.3    As a result, plaintiff has suffered uncontrolled flares of his Crohn's disease, abdominal pain, internal bleeding and other related ailments due to lack of proper care.

## COUNT 2

2.1    Chief dentist J. Parker violated plaintiff's 5th Amendment right's resulting in deliberate indifference to his serious dental health needs.

2.2    In June 2021, plaintiff reported experiencing pain in an anchor tooth used to support his partial denture. At that time, and after the X-ray plaintiff was advised by J. Parker that his anchor tooth was cracked and has an exposed nerve causing the pain. Since that appointment plaintiff has been refused further examination and/or treatment and he continue to suffer serious pain, that the tooth will no longer support his partial denture when he chews, and that his inability to chew has caused adverse effects on his diet and Crohn's disease.

2.3    Plaintiff has suffered loss to tooth and painful cuts to his mouth and gums. Extended amount of pain for an extended amount of time. Loss of partial use, infection, and decay of teeth from lack of

3

dental treatment.

## Count 3

3.1      Counselor Smith, Counselor Beihling, Unit team supervisor Fernandez violated plaintiff's 5th amendment right Due Process Clause, resulting in deliberate indifference to his safety.

3.2      FDC SeaTac Unit Team Counselor Smith, Unit Team Counselor Behling and Unit Team Supervisor Fernandez, violated plaintiff's 5th amendment rights under due process clause, resulting in deliberate indifference to his safety, by facilitating a series of inmate moves while FDC SeaTac was in a COVID-19 lockdown that exposed plaintiff to COVID-19. On January 10th 2022, FDC SeaTac went in to a COVID-19 lockdown and his unit was converted in to a COVID-19 isolation unit due to a number of positive cases. During this time Smith and Behling orchestrated inmate cell moves, Fernandez authorized these moves and all were negligent in their duties to keep the COVID-19 from spreading. They failed to use reasonable care to avoid spreading COVID-19 when they transferred plaintiff who tested negative for COVID-19 into a cell that had minutes prior housed two COVID-19 positive inmates. As a result of being placed in a COVID-19 contaminated cell plaintiff contracted COVID-19. Because plaintiff was originally one of the few that tested negative he was told to work as a unit orderly. Plaintiff started exhibiting symptoms of COVID-19 and reported these symptoms to the unit officer, plaintiff had contracted COVID-19 but was told to continue working, allowing for further spread of COVID-19.

3.3      As a result plaintiff has suffered symptoms of long-term COVID-19. Plaintiff has had to endure more frequent Crohn's flare ups and constant headaches, fevers, chills and loss of sleep as a result of

4

lingering effects. Plaintiff had to suffer through the COVID-19 sickness without any help from medical staff resulting in worsening conditions of his already compromised immune system causing severe cramping, bleeding, and vomiting. Plaintiff has never fully recovered from COVID-19 symptoms.

## COUNT 4

4.1    FDC SeaTac warden Jacquez is the ultimate policy maker for SeaTac, FDC SeaTac clinical Director Scottie Bussell is responsible for the over all health care of the inmate population. B.O.P, the B.O.P implemented the COVID-19 action plan which in turn violated my constitutional rights of informed consent doctrine and right to access medical health services. All resulting in a MONEL claim and violation of plaintiff's 5th amendment rights and deliberate indifference to his safety.

4.2    The B.O.P implemented a COVID-19 action plan in March of 2020 that instructs that all new detainees be tested for COVID-19 before entering the institution. During plaintiff's processing into FDC SeaTac he was assaulted by being tested for COVID-19 with out his consent. A medical intake screener forcefully without warning forced THE Q-tip swab into plaintiff's nose with such force it caused his nose to bleed and his right eye to become black and blue all while plaintiff was shackled with waist chains and hand restraints. Plaintiff was then placed in quarantine for nearly a month with out access to medical or sick call system. The warden in his individual compacity authorized the policy to allow medical to administer COVID-19 tests without plaintiff's consent denying plaintiffs right to choose segregation over the forced test. Scottie Bussell in his individual capacity is in charge of the overall health care of the inmate population and failed in his duties to have plaintiff properly screened by medical upon arrival or direct the medical staff to respond to the multiple medical request plaintiff sent asking to be seen by medical for his eye and other medical conditions.

4.3    Plaintiff suffered bodily assault, black eye, lack of medical treatment, emotional stress, pain and

suffering from lack of help.

## COUNT 5

5.1    Clinical Director Scottie Bussell, Health Services Administrator Giles Durano, violated plaintiffs 5th amendment rights, Due Process Clause, creating deliberate indifference to plaintiff's serious medical needs.

5.2    Scottie Bussell in his individual capacity as the FDC SeaTac Clinical Director failed to monitor, reply or review requests for medical attention directed to him and his department by plaintiff in regards to the lack of medical care plaintiff has recived and the lack of access plaintiff has to medical. Plaintiff has over the last 14 months sent over 100 medical sick call requests asking to be seen for his Crohn's disease symptoms and sever flare ups but has never had a reply or appointment from medical. In Bussell's individual capacity he is in charge of making sure plaintiff is receiving proper medical care in his department from medical.  Giles Durano in his individual capacity is responsible for day-to-day operations in health services, such as scheduling outside care fallow-up appointments. Durano has failed to fallow-up on plaintiff's complaints about the side effects of long-term use of prednisone and the continued use of prednisone by FDC SeaTac to mask plaintiffs Crohn's disease flare ups and not provide adequate or proper medical treatment. Durano has also failed to give plaintiff access to outside care provider appointments as directed by plaintiffs outside doctor. Durano has failed to schedule the outside dental appointment plaintiff needed 8 months ago to extract or fix the exposed nerve in plaintiffs' tooth.

5.3    Defendant has suffered sever Crohn's flare-ups, blood loss, cramping, side effects from medication's, emotional distress, tooth pain and suffering as a result of the lack of care.

6

## PROPOSED AMENDEMENT'S TO ORIGINAL COMPLAINT

The below proposed joinder and amended complaint all arises out of the same circumstances related to Mr. Frick's original complaint of inadequate medical care and treatment at FDC SeaTac previously raised in Mr. Frick's SAC, and questions of law or fact common to all of the defendants will arise. See Fed. R. Civ. P. 20(a)2).

6.1     Kevin Polsalski (AHSA) and T. Thomas (HSA) violated plaintiff's 5th Amendment and 8th Amendment rights to adequate medical care and were deliberate indifferent to plaintiff's serious medical needs. T. Thomas is the Health Service Administrator and is responsible for all actions of medical care providers including Kevin Polsalski the Assistant Health Service administrator.

6.2     Kevin Polsalski Assistant Health services Administrator (AHSA) and T. Thomas Health Service Administrator have caused deliberate indifference to Mr. Frick's serious medical needs by failing to treat Mr. Frick's Crohn's Disease and failure to monitor Mr. Frick's lab results and documented high blood pressure for which they were court ordered to treat. Polsalski and Thomas were also deliberate indifferent to Mr. Frick's medical needs by failing supply Mr. Frick with release medications when the court ordered Mr. Frick released to seek medical care (see case # CR21-110-RAJ) on December 16th 2022 This was a complete breakdown in their medical responsibilities to supply medication upon release. Especially medications that can cause death or severe illness if not administered correctly. Polsalski was very much aware that Mr. Frick had been released because he was on the phone during the hearing, and he failed to supply any release medications to Mr. Frick which caused Mr. Frick to have to go to the ER the day after he was release due to acute steroid withdrawal syndrome from the lack of prednisone and other needed medications. Additionally, upon return from an outside Oral surgeon on November 3rd, 2022, Mr. Frick was provided with a prescription for medications by a licensed provider for Amoxicillin for infection and Narco for pain. Polsalski substituted ibuprofen in place of the prescribed Narco pain medication. It is forbidden for a person with Crohn's disease to take ibuprofen and could cause serious internal bleeding and other complications to Mr. Frick's health. Polsalski was negligent and deliberate indifferent to Mr. Frick's medical needs by prescribing a medication that could have had serious and

7

adverse effects had Mr. Frick been unaware of the adverse effects of taking ibuprofen. This is a violation of the informed consent doctrine where a prescribing physician or medical practitioner is supposed to know what medications would have allergic

or adverse effects to Mr. Frick's medical condition. Mr. Frick was left with no medication for pain after having oral surgery on his mouth.

6.3    This continued neglect has caused Mr. Frick to develop other medical conditions such as high blood pressure, addiction to steroids, heart issues, Mr. Frick had to suffer with mouth pain from lack of pain-relieving medication after oral surgery. Other medical conditions that are being evaluated by an outside provider now that Mr. Frick is released to seek adequate medical care.

## PROPOSED ADDITIONAL COMPLAINTS AGIANST WARDEN ISRAEL JACQUEZ

7.1    Warden Israel Jacquez has violated published professional standards of care at FDC SeaTac and the BOPs own procedures for medical care. Warden Jacquez was deliberately indifferent to Mr. Frick's serious medical needs, which is in violation of Mr. Frick's 5th amendment right to due process. Warden Jacquez had actual knowledge that there were deficiencies in the medical care system at FDC SeaTac which created a risk of being short of staff which in return created a lack of medical care provided to Mr. Frick and other inmates housed at FDC SeaTac, as a result of inadequate staffing.

7.2    Warden Jacquez implemented the Primary Care Provider Team (PCPT) health service program. The PCPT requires the institution to access it's staffing patterns and full- filling of staffing positions. For the PCPT to work there must be an adequate number of medical staff. For every 1,000 incarcerated

8

inmates, per BOP policy there must be 1 clinical director, 1 health service administrator, 1 licensed physician, 4 mid-level providers (MLP), 1 registered nurse, 2 licensed practicing nurses (LPN), 2 health technicians and 1 medical clinical staff provider. FDC SeaTac at present has no clinical director, no licensed physician, 1 MLP and 2 LPN's. FDC SeaTac has been short staffed since January 2020. The program statement specifically states that insufficient staffing will have adverse effects on providing adequate health care. At the height of the pandemic the BOP instituted its modified operations for its health care which put forth a modified electronic sick call operation where it was based on trulincs system on priority of need this system failed here at FDC SeaTac due to staffing shortages. Mr. Frick has been at FDC SeaTac for 18 months and has tried on multiple occasions to use the electronic sick call system to address serious medical needs his attempts to use the implemented system were never answered and his conditions had gone untreated for months. In September of 2022 medical staff notified the FDC inmate population that the electronic sick call system had not been working. So, Mr. Frick essentially had no access to medical other then to discuss private medical conditions at pill line in front of other inmates which also violates Mr. Frick's rights to privacy (HIPA), policy requires that inmates be seen in private exam rooms to discuss their conditions privately. This BOP policy isn't being fallowed here at FDC SeaTac. The medical staff has been so inadequate that medical staff lack the time to do their jobs. The COVID-19 action plan implemented by the BOP facilitates a procedure that does not allow for proper diagnosis and treatment or adequate medical. Care of inmates including Mr. Frick's medical condition.

7.3    Treatment of Mr. Frick's condition consisted of little more than documenting his worsening condition and continuing ineffective steroid treatment causing Mr. Frick to become steroid dependent Mr. Frick has other conditions that have failed to be addressed due to the staffing shortage. Administrators such as Warden Jacquez are reliable and are deliberately indifferent based on his

9

knowledge of deficiencies in the medical care system at FDC SeaTac. Mr. Frick has suffered 18 months with a painful tooth with an exposed nerve without any adequate medical care until the court ordered the FDC to provide immediate medical care within two weeks in which FDC SeaTac failed to do. Mr. Frick had further suffered with other conditions such as high blood pressure of 184/167 and has not been treated correctly for his active Crohn's disease flares. As a result, Mr. Frick has suffered internal pain from bleeding and vomiting and blood occult deficiencies as well as becoming steroid dependent due to the lack of proper or adequate medical care due to lack of staff to provide needed care. Mr. Frick's condition has evolved to life threatening based on current blood pressure readings, blood test results and heart complications as well as him being now steroid dependent.

## RELIEF SOUGHT

Plaintiff seeks 10,000,000 in compensatory damages and 30,000,00 in punitive damages Plaintiff also seeks to have the charges in his criminal case be dismissed case # CR21-110-RAJ-1 due to conditions of confinement that constituted cruel and unusual punishment.

Dated this 23rd day of December 2022.

/S/ Christopher Frick

10

Chris Frick
27340 Village Place NW
Stanwood, WA 98292

Seattle PSDC 981
TUE 27 DEC 2022 PM

Clerk, United States District Court
United States Courthouse
700 Stewart Street, Suite 2310
Seattle, WA 98101

FILED
LODGED
RECEIVED

MAIL

DEC 29 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
DISTRICT OF WASHINGTON