UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER FRICK,

          Plaintiff,

   v.

DR. DY, *et al.*,

          Defendants.

Case No. C22-801-JHC-MLP

REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This is a prisoner civil rights action proceeding under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff Christopher Frick ("Plaintiff"), proceeding *pro se* and *in forma pauperis* ("IFP"), is an individual who was confined at the Federal Detention Center ("FDC") in SeaTac, Washington, at the time he filed this action.[1] Plaintiff has filed an amended complaint alleging various deprivations of his constitutional rights related to the handling of his Crohn's disease, dental health, and the COVID-19 pandemic during his incarceration at FDC SeaTac. (*See* Third Am. Compl. (dkt. # 52) at 2-10.)

---

[1] On December 14, 2022, the Honorable Richard A. Jones temporarily released Plaintiff from custody in his underlying criminal case for purposes of obtaining treatment for his medical conditions in the community. *See United States v. Frick*, CR21-110-RAJ-1 (W.D. Wash.), dkt. ## 126-27. Plaintiff remains on home detention on an appearance bond. *Id.*, dkt. ## 133, 151.

REPORT AND RECOMMENDATION - 1

This matter comes before the Court on: (1) Defendants' Motion to Dismiss ("Defendants' Motion"); (2) Plaintiff's "Motion to Strike Defendants' Motion and Request for Sanctions" ("Plaintiff's Motion"); and (3) Defendants Kevin Posalski and T. Thomas's Motion to Join Co-Defendants' Motion to Dismiss ("Defendants' Motion for Joinder"). (Defs.' Mot. (dkt. # 59); Pl.'s Mot. (dkt. # 63); Defs.' Joinder Mot. (dkt. # 68).)

Defendants generally contend that Plaintiff's amended complaint should be dismissed for failure to exhaust his administrative remedies prior to bringing this action.[2] (Defs.' Mot. at 1-2.) Plaintiff filed a response opposing Defendants' Motion, and Defendants filed a reply. (Pl.'s Resp. (dkt. # 62); Defs.' Reply (dkt. # 64).) Based on Plaintiff's request, this Court additionally authorized a supplemental response and reply to allow Plaintiff time to receive records from FDC SeaTac. (Order (dkt. # 72); Pl.'s Supp. Resp. (dkt. # 73); Defs.' Supp. Reply (dkt. # 75).)

Having considered the parties' motions, the governing law, and the balance of the record, the Court recommends that: (1) Defendants' Motion for Joinder (dkt. # 68) be GRANTED; (2) Plaintiff's Motion (dkt # 63) be DENIED; and (3) Defendants' Motion to Dismiss (dkt. # 59) be DENIED, as further explained below.

## II.  BACKGROUND

### A.  Plaintiff's Claims

On January 3, 2023, this Court directed Plaintiff's third amended complaint be served on Defendants. (Dkt. # 54.) Plaintiff asserts claims in his third amended complaint against ten FDC SeaTac employees: (1) Chief Dentist James Parker; (2) Dr. Maria Dy; (3) Unit DC Counselor

---

[2] Defendants assert in a footnote that Plaintiff has no remedy for his claims because they are an impermissible extension of *Bivens* and Defendants are otherwise entitled to qualified immunity. (Defs.' Mot. at 1 n.1 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1845-55 (2017); *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022)).) Defendants did not specifically raise these defenses in the instant motion, but note that they reserve the right to raise these defenses at a later time. (*Id.*)

REPORT AND RECOMMENDATION - 2

Jeffrey Smith; (4) Unit DB Counselor Jason Behling; (5) Unit Team Supervisor Christopher Fernandez; (6) Warden Israel Jacquez; (7) Clinical Director Scotty Bussell; (8) Health Service Administrator ("HSA") Giles Durano; (9) Acting Assistant HSA Kevin Posalski; and (10) HSA "T. Thomas." (Third Am. Compl. at 1-2; *see also* Defs.' Mot. at 2-3.)

In his first count, Plaintiff alleges Dr. Dy and Chief Dentist Parker violated his Fifth Amendment rights, resulting in deliberate indifference to his medical needs, when they failed to properly treat his Crohn's disease by prescribing him prednisone for flare ups between June 2021 and August 2022, and failing to monitor adverse effects of the medication, and when they failed to schedule any follow up appointments or lab work. (Third Am. Compl. at 2-3.) Based on this treatment, Plaintiff alleges he has suffered from uncontrolled flares of his Crohn's disease, abdominal pain, internal bleeding, and other related ailments. (*Id.* at 3.)

Plaintiff alleges in his second count that Chief Dentist Parker violated his Fifth Amendment rights, resulting in deliberate indifference to his serious dental health needs. (Third Am. Compl. at 3-4.) Plaintiff claims that in June 2021, he reported experiencing pain in an anchor tooth used to support his partial denture. (*Id.* at 3.) Upon examination at that time, Chief Dentist Parker allegedly advised Plaintiff that his anchor tooth was cracked and exposing a tooth nerve, which was causing him pain. (*Id.*) Plaintiff alleges that following that examination he was refused further examination and treatment, and as a result, he continues to suffer from serious dental pain, his anchor tooth will no longer support his partial denture, and his inability to chew has caused adverse effects on his diet and Crohn's disease. (*Id.* at 3-4.)

Plaintiff's third count alleges that Unit DC Counselor Smith, Unit DB Counselor Behling, and Unit Team Supervisor Fernandez violated his Fifth Amendment due process rights, resulting in deliberate indifference to his safety. (Third Am. Compl. at 4.) Plaintiff alleges that Defendants

Smith, Behling, and Fernandez facilitated a series of inmate moves on January 10, 2022, while FDC SeaTac was in a COVID-19 lockdown, that exposed him to COVID-19. (*Id.*) Plaintiff alleges that during these inmate moves, though he had tested negative for COVID-19, he was transferred into a cell that had housed inmates who had tested positive for COVID-19. (*Id.* at 4.) As a result, Plaintiff alleges he contracted COVID-19. (*Id.*) Despite having tested positive for COVID-19, Plaintiff alleges that he was then told to continue working as a unit orderly, allowing for further spread of the virus. (*Id.*) Based on his exposure and contraction of COVID-19, Plaintiff claims that he now suffers from, *inter alia*, symptoms of long-term COVID-19, more frequent Crohn's disease flares, and a worsening of his compromised immune system causing him severe cramping, bleeding, and vomiting. (*Id.* at 4-5.)

       Plaintiff alleges in his fourth count a claim under *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Third Am. Compl. at 5.) Specifically, Plaintiff alleges that Warden Jacquez as the policy maker for FDC SeaTac, Clinical Director Bussell as the manager of inmate healthcare, and the Federal Bureau of Prisons ("BOP") as the implementing party responsible for the COVID-19 action plan, each violated his Fifth Amendment constitutional rights of informed consent and access to medical health services.[3] (*Id.*) Plaintiff alleges that the BOP implemented the COVID-19 action plan in March 2020, which resulted in Plaintiff being forcibly tested for COVID-19 and being placed in quarantine for nearly a month without access to medical or the sick call system. (*Id.*) Plaintiff alleges that Warden Jacquez authorized a policy of allowing for forcible testing instead of allowing Plaintiff the option to choose segregation over

---

[3] Though named in this count, Plaintiff did not list the BOP as a defendant in his amended complaint and has previously been advised that it is not a viable party for a *Bivens* claim. (*See* dkt. ## 10 at 4-5, 17 at 12 ("Plaintiff has asserted a claim against BOP, but Plaintiff failed to name the BOP as a Defendant in his proposed amended complaint, and as Plaintiff has been previously advised, there can be no *Bivens* cause of action against a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 484-486 (1994).").)

REPORT AND RECOMMENDATION - 4

forced testing. (*Id.*) Plaintiff further alleges that Clinical Director Bussell failed to have Plaintiff properly screened by medical personnel upon his arrival or to direct the medical staff to respond to Plaintiff's multiple complaints requesting treatment for his conditions. (*Id.*) As a result of these policies, Plaintiff alleges that he has suffered "bodily assault," a black eye, lack of medical treatment, and emotional pain and suffering from not having received proper medical care. (*Id.* at 5-6.)

In his fifth count, Plaintiff alleges that Clinical Director Bussell and HSA Durano violated his Fifth Amendment rights to due process, resulting in deliberate indifference to his medical needs. (Third Am. Compl. at 6.) Plaintiff alleges that Clinical Director Bussell and HSA Durano both failed to review or act on his multiple requests for medical care regarding his Crohn's disease and dental issues, specifically claiming to have sent "over 100 medical sick call requests" over the last 14 months without receiving a reply or an appointment. (*Id.*) Plaintiff further claims that HSA Durano failed to follow up about the long-term effects of continued prednisone use on his Crohn's disease, failed to give access to assistance from outside health care providers, and failed to schedule a dental appointment to extract or fix his cracked anchor tooth. (*Id.*) Plaintiff asserts that he suffered from severe Crohn's disease flare ups, blood loss, cramping, medication side effects, emotional distress, and tooth pain as a result of the lack of medical care. (*Id.*)

In his sixth count, Plaintiff alleges that Acting Assistant HSA Posalski and HSA T. Thomas violated his Fifth and Eighth Amendment rights to adequate medical care, resulting in deliberate indifference to his medical needs.[4] (Third Am. Compl. at 7.) Plaintiff claims that both

---

[4] Plaintiff was previously advised that the Eighth Amendment was an improper vehicle for bringing his claims as a pretrial detainee. (*See* dkt. # 17 at 10 ("Because Plaintiff is currently a pretrial detainee . . . the Eighth Amendment has no applicability because the government 'does not acquire the power to punish

REPORT AND RECOMMENDATION - 5

HSA Posalski and T. Thomas failed to treat his Crohn's disease and failed to monitor his lab results and high blood pressure, which they were court ordered to treat by Judge Jones in his criminal case. (*Id.* (citing *United States v. Frick*, CR21-110-RAJ-1 (W.D. Wash.), dkt. ## 121, 126).)

Plaintiff alleges that both HSA Posalski and T. Thomas also failed to provide him release medications despite being aware that he was being released to receive care for his medical ailments. (Third Am. Compl. at 7.) Plaintiff claims that he had to go to the emergency room shortly after being released due to "acute steroid withdrawal" because he was not provided release medications. (*Id.*) Plaintiff further notes that, in November 2022, HSA Posalski provided him ibuprofen, which is contraindicated for his medical conditions, in place of previously prescribed painkillers and left him with no pain medication after an oral surgery. (*Id.* at 7-8.) Plaintiff claims that as a result of the lack of medical care, he has now developed other medical conditions, including high blood pressure, steroid addiction, and heart issues, and that he has suffered from prolonged mouth pain. (*Id.* at 8.)

Finally, Plaintiff alleges in his seventh count that Warden Jacquez violated his Fifth Amendment rights, resulting in deliberate indifference to his safety, by implementing and overseeing FDC SeaTac's Primary Care Provider Team health service program. (Third Am. Compl. at 8-10.) In sum, Plaintiff claims that Warden Jacquez is responsible for short staffing at FDC SeaTac since January 2020, which has resulted in an insufficient electronic sick call system that allowed for his medical conditions to go untreated. (*Id.* at 8-9.) As such, Plaintiff claims *inter alia* that his treatment while at FDC SeaTac consisted solely of documenting his worsening condition, continuing ineffective steroid treatment that caused him to become dependent on such

---

with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.' *Ingraham v. Wright*, 430 U.S. 651, 672 n.40 (1977).").)

REPORT AND RECOMMENDATION - 6

treatment, and failing to address life-threatening blood pressure readings that resulted in heart complications. (*Id.* at 9-10.)

Plaintiff seeks $10 million in compensatory damages and $30 million in punitive damages, and he requests that the charges in his criminal case be dismissed due to his conditions of confinement. (Third Am. Compl. at 10.)

B.    **BOP Administrative Remedy Program**

Per Defendants, FDC SeaTac utilizes the BOP Administrative Remedy Program for inmates to submit complaints concerning their confinement. (Brieschke Decl. (dkt. # 60) at ¶¶ 3, 5 (citing 28 C.F.R. §§ 542.10-542.19).) All inmates upon arrival at any BOP institution, via initial placement or transfer, are required to attend "Admissions and Orientation," which covers what the program is, what it is used for, and how to access it. (*Id.* at ¶ 8.)

The inmate must first seek informal resolution of their issue through their institution's staff using an informal resolution form referred to as a BP-8. (Brieschke Decl. at ¶ 4 (citing 28 C.F.R. § 542.13).) After seeking an informal response on a BP-8, the inmate may then submit a formal complaint to the institution's warden by filing a BP-9 if the informal response to the BP-8 is unsatisfactory. (*Id.* (citing 28 C.F.R. § 542.14).) If the institution's warden denies the BP-9, the inmate may then appeal the denial to the Regional Director of the region in which they are confined by filing a BP-10. (*Id.* (citing 28 C.F.R. § 542.15(a)).)

If the Regional Director denies the BP-10, the inmate may then appeal to BOP's General Counsel in Washington, D.C by filing a BP-11 within 30 days of the Regional Director's response. (Brieschke Decl. at ¶ 4; *see also id.* at ¶ 9(I) (citing 28 C.F.R. § 542.15(a)).) Exhaustion of administrative remedies does not occur until the inmate has requested and been denied relief at each level. (*Id.*)

REPORT AND RECOMMENDATION - 7

### C. Plaintiff's Administrative Remedy History

Plaintiff was in custody at FDC SeaTac from May 20, 2021, until December 15, 2022. (Second Brieschke Decl. (dkt. # 65) at ¶ 3.) Relevant to the period of Plaintiff's allegations, on May 23, 2022, Plaintiff filed a BP-9 that requested: (1) medical care for his Crohn's disease; (2) an explanation for why he was being given medication for his Crohn's disease that was contraindicated for his condition; (3) a special diet due to difficulties he was having eating because of his dental issues; and (4) an explanation for why he was let go from his inmate job. (*See* Brieschke Decl. at ¶ 9(E); Pl.'s Resp. at 10, 14, 24.) The remedy was rejected the same day because Plaintiff did not submit the required number of copies, because it contained too many issues, and because it did not relate to issues contained in his previously filed BP-8.[5] (*Id.*) Plaintiff was advised to correct his remedy and to re-submit within five days. (*Id.*)

On July 11, 2022, Plaintiff re-filed the same remedy. (Brieschke Decl. at ¶ 9(F).) However, this remedy was also rejected on the same day because it contained too many issues. (*Id.*) Plaintiff was advised to correct and re-submit within five days, but per Defendants' records, Plaintiff did not re-submit this remedy. (*Id.*)

On August 3, 2022, Plaintiff filed a new BP-9 again requesting both medical and dental attention for his ailments. (Brieschke Decl. at ¶ 9(G); Pl.'s Resp. at 13.) This remedy was closed on September 1, 2022. (Brieschke Decl. at ¶ 9(G).)

On October 17, 2022, Plaintiff appealed the September 1, 2022 decision, but this remedy was rejected the same day by the BOP Regional Director because Plaintiff did not appeal on the proper form. (*Id.* at ¶ 9(I); Pl.'s Resp. at 23.) Based on Defendants' records, an appeal of this

---

[5] A submitted "remedy" allows an inmate to file a complaint or grievance concerning their confinement in BOP's Administrative Remedy Program. (*See* Brieschke Decl. at ¶ 3 (citing 28 C.F.R. §§ 542.10-542.19); *see also* Second Brieschke Decl. at ¶ 3.)

REPORT AND RECOMMENDATION - 8

remedy would have been due to BOP's General Counsel by November 17, 2022, but Plaintiff did not appeal. (Brieschke Decl. at ¶ 9(I).)

On August 15, 2022, Plaintiff filed a remedy complaining about FDC staff, "being placed in cell 29", and COVID-19 issues at FDC Sea-Tac. (Brieschke Decl. at ¶ 9(H).) Per Defendants' records, this remedy was closed the same day, and Plaintiff did not appeal. (*Id.*) Therefore, based on Defendants' records, Defendants represent that Plaintiff did not exhaust the BOP Administrative Remedy Program with regard to any of the issues he raises in his third amended complaint. (*Id.* at ¶ 10.)

However, Plaintiff asserts that several of his filed administrative remedies were either not considered, not responded to, or not tracked by Defendants' database. (Pl.'s Resp. at 1.) Plaintiff has submitted in support of this assertion a record of an administrative remedy appeal he alleges he filed on October 3, 2022, with regard to his medical and dental issues, but indicates he never received a response to. (*Id.* at 11-12.) Plaintiff has also submitted correspondence concerning multiple inquires he made to FDC SeaTac staff about the status of his administrative remedies. (*Id.* at 14-17, 19.) Based on this correspondence, it appears that Plaintiff's BP-9 that he filed with regard to his request for medical care for his Crohn's disease and a special diet was lost by FDC staff, though Plaintiff was advised based on his inquiry that it had been rejected. (*Id.* at 15-16.)

Plaintiff additionally provides evidence of inquiries he sent to FDC staff on May 22-23, 2022, and on June 8, 2022, that indicate he had filed multiple administrative remedy requests over the past six months, but had received only one response about having too many issues listed in his remedy. (Pl.'s Resp. at 17, 19-21.) Across these inquiries, Plaintiff sought explanation for why his administrative remedies were disappearing or otherwise being denied. (*Id.*) Based on

REPORT AND RECOMMENDATION - 9

this evidence, Plaintiff avers several of his remedies either received no response or were designated "as lost and never returned." (*See id.* at 19.)

### D. Plaintiff's Additional Evidence

Plaintiff has also submitted to the record a declaration from Paula Olson, his appointed defense counsel in his criminal case, who has represented Plaintiff since June 2021. (Olson Decl. (dkt. # 74).)

Per Ms. Olson, she learned early in her representation of Plaintiff that he had significant medical issues that were being unattended to while confined at FDC SeaTac. (Olson Decl. at 1.) Based on his lack of received medical attention for his Crohn's disease and cracked tooth, Ms. Olson filed several motions seeking review of Plaintiff's detention status, which as noted above, ultimately resulted in Plaintiff's temporary release by Judge Jones to obtain treatment. (*Id.*; *see also United States v. Frick*, CR21-110-RAJ-1 (W.D. Wash.), dkt. ## 126-27.) Ms. Olson further states that Plaintiff informed her on many occasions of "emails and electric copouts" he sent to medical staff at FDC SeaTac, as well as his efforts to appeal any unfavorable response to the warden. (Olson Decl. at 1-2.) Ms. Olson asserts that she is "aware and [has] seen multiple grievances that [Plaintiff] filed that were not responded to." (*Id.* at 2.)

Finally, in an attached exhibit to Ms. Olson's declaration, Plaintiff has submitted several signed declarations and statements from at least 20 FDC SeaTac inmates regarding their inability to exhaust their administrative remedies with regard to requests to seek medical attention while confined at FDC SeaTac. (*See* Olson Decl., Ex. 1 (dkt. # 74-1) at 1-29.) In general, the inmate statements represent that FDC SeaTac Unit Counselors routinely fail to file inmate remedies, only accepting inmate remedies after a significant delay or otherwise refusing to accept inmate

REPORT AND RECOMMENDATION - 10

1  remedies at all.[6] (*See id.* at 23-27.) The inmates' statements further claim that any remedies that

2  are accepted regularly do not receive responses, and as a result, the FDC SeaTac inmates are

3  unable to exhaust their administrative remedies. (*See id.*) The inmates' statements also represent

4  that none of them were given an orientation, handbook, and/or guide by FDC SeaTac staff as to

5  how to file a remedy under the BOP's Administrative Remedy Program, and that they do not

6  receive assistance from FDC SeaTac staff on how to properly fill out the required forms. (*See

7  id.*)

### III. DISCUSSION

#### A. Defendants' Motion for Joinder

First, Defendants' Motion for Joinder seeks to join Defendants' Thomas and Posalski to Defendants' Motion. (Defs.' Joinder Mot.) At the time Defendants' Motion was initially filed, Defendants Thomas and Posalski had not yet obtained representation from the Department of Justice. (*See* Defs.' Mot. at 1, n.1.) However, both subsequently obtained representation prior to Defendants' Motion becoming ripe for the Court's consideration. (*See* dkt. # 67.)

As detailed above, Plaintiff's third amended complaint raises claims against both Defendants Thomas and Posalski for alleged violations of his Fifth and Eighth Amendment rights to adequate medical care based on their alleged failure to treat his Crohn's disease and dental health. (*See* Third Am. Compl. at 7-8.) These claims are of the same constitutional import and dimension as those brought against the other FDC SeaTac Defendants. (*See id.* at 3-6.) In addition, Defendants Thomas and Posalski similarly claim that Plaintiff has failed to exhaust his

---

[6] Plaintiff's submitted evidence also includes "TRULINCS" communications between two FDC SeaTac inmates and FDC SeaTac staff from October 2022 and February 2023 evincing the inmates' difficulties and delay in being able to file the required BP-8 and BP-9 forms for BOP's Administrative Remedy Program. (Olson Decl., Ex. 1 at 27-29.) However, it is unclear from these submissions whether these inmates' inquiries were responded to by FDC SeaTac staff.

administrative remedies with respect to the claims asserted against them. (Defs.' Joinder Mot. at 2-3.)

Defendants Thomas and Posalki's arguments are both factually and legally appropriate for consideration in conjunction with Defendants' Motion. Plaintiff has also not submitted any opposition to Defendants Thomas and Posalski joining in Defendants' Motion. Therefore, Defendants' Motion for Joinder should be granted.

### B.    Plaintiff's Motion to Strike and Request for Sanctions

Next, Plaintiff's Motion requests that the Court strike Defendants' Motion and issue sanctions against Defendants for failing to mail him copies of Defendants' Motion. (Pl.'s Mot. at 1.) Plaintiff avers that Defendants mispresented to the Court that their motion was sent by certified mail as he did not receive it. (*Id.*) Plaintiff represents that he only learned of Defendants' Motion after talking with his defense counsel in his criminal case, who discovered the motion had been filed and informed Plaintiff. (*Id.*) Plaintiff notes this is the second time Defendants have misrepresented a certified mail filing, pointing to an earlier filing in this case that Defendants represented as mailed to Plaintiff on November 3, 2022, but that was in fact mailed on November 9, 2023. (*Id.* at 1-2, 7-8 (citing dkt. ## 37, 41).)

Defendants respond that their motion to dismiss was filed on February 13, 2023. (*See* Defs.' Mot.) Defendants' attached certificate of service notes that Defendants served Plaintiff by first class mail on February 13, 2023, at his registered address on PACER. (*Id.* at 12.) Defendants further respond that even if Plaintiff did not receive the motion in the mail, there is no prejudice to Plaintiff as he admits he obtained a copy by February 27, 2023, and was able to timely respond. (Defs.' Resp. (dkt. # 66) at 2.) Plaintiff did not file a reply to Defendants' response.

REPORT AND RECOMMENDATION - 12

1     Here, Plaintiff timely filed a response to Defendants' Motion on February 28, 2023, six

2  days before it was due on March 6, 2023. (*See* Pl.'s Resp.) As such, Plaintiff was not prejudiced

3  by any alleged failure to receive Defendants' Motion as he was able to obtain a copy of

4  Defendants' Motion with enough time to timely submit an opposition to it. *See Munoz-Munoz v.*

5  *Locke*, 2013 WL 12177036, at *2 (W.D. Wash. Mar. 19, 2013) ("Here, Plaintiff seeks a severe

6  sanction—striking an entire dispositive motion which she undisputedly received—for a minor

7  error. While the filing should have been mailed to Plaintiff . . . there is no apparent prejudice . . .

8  given that she not only received, but has responded to the motion in a timely manner.").

9     Because Plaintiff was not prejudiced by any alleged non-receipt of Defendants' Motion in

10 the mail, Plaintiff's Motion should be denied.

11    **C.    Defendants' Motion to Dismiss**

12    Defendants' Motion argues that they have met their burden to demonstrate that Plaintiff

13 failed to exhaust his administrative remedies prior to filing this action, and therefore, are entitled

14 to judgment as a matter of law. (Defs.' Mot. at 1-2, 7-11.) Defendants additionally contend that

15 Plaintiff has failed to cite to any affirmative acts by FDC SeaTac officials that demonstrate that

16 he was prevented from fully exhausting any of his submitted remedies relating to claims

17 contained in his third amended complaint. (*Id.*; Defs.' Supp. Reply at 2-4.)

18    Plaintiff counters that he should not be required to fully exhaust his available

19 administrative remedies because several of his administrative remedies went missing or

20 remained unanswered. (*See* Pl.'s Resp.; Pl.'s Supp. Resp.) As such, Plaintiff argues that he has

21 exhausted his available administrative remedies and that any failure to exhaust should be

22

23

excused because Defendants have abused the administrative remedy system to cause the process to go uncompleted.[7] (Pl.'s Supp. Resp. at 2-9, 11-12.)

          *i.*      *Exhaustion Legal Standards*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), *accord*, *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA"); *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc). The prisoner must complete the administrative review process in accordance with the applicable rules. *Woodford*, 548 U.S. at 92-95 (finding "proper" exhaustion means full compliance with all procedural requirements of an institution's grievance process).

Defendant bears the initial burden of showing there was an available administrative remedy and that plaintiff did not exhaust that remedy. *Albino*, 747 F.3d at 1169, 1172. Once that showing is made, the burden shifts to plaintiff to demonstrate he exhausted his administrative remedies or to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him" by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* at 1172 (citation omitted). Because failure to

---

[7] Plaintiff additionally argues that Judge Jones's decision to allow him to be temporarily released pending his criminal trial should "exhaust the remedy requirement by default." (Pl.'s Supp. Resp. at 13-14.) Though it is clear Judge Jones viewed Plaintiff's lack of treatment for his medical issues at FDC SeaTac as warranting his temporary release, Judge Jones's determination in Plaintiff's criminal case is irrelevant to the issue before this Court of whether Plaintiff exhausted his available administrative remedies before filing suit.

REPORT AND RECOMMENDATION - 14

exhaust is an affirmative defense Defendants must plead and prove, the ultimate burden rests with Defendants. *Id.*

Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to plaintiff, shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1168; Fed. R. Civ. P. 56(a). If, however, material facts are disputed, then "summary judgment should be denied" and disputed factual questions relevant to exhaustion should be decided by the court "in a preliminary proceeding." *Albino*, 747 F.3d at 1166, 1168. If administrative remedies have not been exhausted at the time an action is brought, the action must be dismissed without prejudice. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

      ii.     Analysis

Here, Defendants have submitted evidence that the BOP provides an administrative remedy process and that Plaintiff failed to completely exhaust it for any of his claims. (*See* Brieschke Decl. at ¶¶ 9-10.) Defendants' evidence demonstrates that Plaintiff filed at least three administrative remedies relating to the claims contained in his complaint, including one remedy that was at least appealed to the BOP Regional Director, but that none were appealed to BOP's General Counsel. (*Id.* at ¶¶ 9(E)-(I), 10.) This would suggest that Plaintiff generally understood the BOP's Administrative Remedy Program and that it was available to him. Plaintiff also appears to not dispute that he did not fully exhaust the program's appeal process with respect to the claims contained in his complaint. (*See* Pl.'s Supp. Resp. at 5-7.) Consequently, Defendants

have met their initial burden of showing there was an available administrative remedy and that Plaintiff did not exhaust that generally available remedy.

However, Plaintiff in turn has submitted evidence with his response that several of his remedies were either not responded to by FDC SeaTac staff or were otherwise lost by FDC SeaTac staff such that BOP's Administrative Remedy Program was not effectively available to him. (*See* Pl.'s Resp. at 11-12, 15-19; Olson Decl.) Furthermore, Plaintiff represents and submits that inmates at FDC SeaTac do not receive any formal training in how to properly utilize the BOP's Administrative Remedy Program and that the only way for him to seek relief for his medical issues was through the review of his detention order in his criminal case. (*See* Pl.'s Supp. Resp. at 4 (citing Olson Decl., Ex. 1), 12-14.)

An administrative process is available if it is "capable of use." *Ross v. Blake*, 578 U.S. 632, 643 (2016). The Supreme Court has explained administrative remedies are deemed "unavailable" to an inmate: (1) where the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is opaque and incapable of use; and (3) where administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44; *see also Fuqua v. Ryan*, 890 F.3d 838, 850 (9th Cir. 2018). Consequently, "acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable." *See Luyster v. Bishop*, 2022 WL 13925792, at *4 (W.D. Wash. Oct. 24, 2022) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010)). The Ninth Circuit has also "refuse[d] to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through

indefinite delay in responding to grievances." *Id.* (citing *Brown v. Valoff*, 422 F.3d 926, 943 n.18 (9th Cir. 2005) (quoting *Lewis v. Washington*, 300 F.3d 829, 831-32 (7th Cir. 2002)).

Viewing the evidence in the light most favorable to Plaintiff, this Court finds that genuine issues of material fact exist as to the effective availability of Plaintiff's administrative remedies at FDC SeaTac. Based on the evidence submitted by Plaintiff, Plaintiff routinely inquired as to the status of his administrative remedies, why they were missing, why he was not receiving a response to his filed remedies, and why his remedies were being denied. (*See* Pl.'s Resp. at 14-17, 19-21.) In at least one instance, FDC SeaTac staff admitted to having lost Plaintiff's BP-9 form for one of his remedies at issue in this case. (*See id.* at 15.) Several of Plaintiff's inquiries also appear to have not been responded to by FDC SeaTac staff. (*See id.* at 17, 19-21.)

Plaintiff has further represented that his requests to obtain forms to submit remedies, or re-submit previously denied remedies, were either delayed for months or not responded to by FDC SeaTac staff to allow him to appropriately proceed through the process. (*See* Pl.'s Resp. at 2, 5-6; Pl.'s Supp. Resp. at 11-12.) Plaintiff has substantiated his difficulties progressing through the BOP's Administrative Remedy Program with evidence of the above-considered inquiries to FDC SeaTac submitted with his response, and through his criminal counsel's declaration in which counsel testifies that she is aware of and has seen remedies Plaintiff filed that were not responded to or addressed. (*See* Olson Decl. at 1-2.) Plaintiff has also provided several signed statements and declarations from FDC SeaTac inmates with Ms. Olson's declaration who all corroborate Plaintiff's account given their own difficulties exhausting administrative remedies to obtain medical attention while confined at FDC SeaTac. (*See id.*, Ex. 1 at 23-27.)

In addition, Defendants have not submitted any information as to what specific training or handbooks were provided to Plaintiff to utilize BOP's Administrative Remedy Program. *See*

REPORT AND RECOMMENDATION - 17

*Albino*, 747 F.3d at 1174-76 (finding defendants failed to demonstrate available administrative remedy where defendants failed to provide evidence showing inmates were told how to use the grievance procedure). Defendants submit that such training is provided to inmates at the time of admission into a BOP institution as part of their orientation. (*See* Brieschke Decl. at ¶ 8.) Defendants have not, however, submitted any evidence as to what was actually provided to Plaintiff, what is provided to FDC SeaTac inmates at orientation, or whether any other supplemental materials exist to help inform inmates how to progress through the BOP's Administrative Remedy Program.[8] Plaintiff's evidence also suggests that such training is not provided at the time of admission to FDC SeaTac and that many inmates only know of the administrative remedy process because another inmate told them (Olson Decl., Ex. 1 at 23-27). *See King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (en banc) ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."); *see also Albino*, 747 F.3d at 1174-76.

At a minimum, and on this record, it is clear that genuine issues of material fact also exist as to what information Plaintiff received regarding the BOP's Administrative Remedy Program to render it effectively available and capable of use. Such information and training would likely have allowed Plaintiff to avoid the repeated procedural hurdles that appear to have plagued him in attempting to navigate Defendants' administrative scheme to exhaust the claims contained in his third amended complaint. (*See* Pl.'s Resp. at 14-17, 19-21; Brieschke Decl. at ¶ 9(E)-(H).)

---

[8] Plaintiff's supplemental response suggests that admission orientation packets are provided to inmates at orientation and are supposed to be signed off to evince that they received orientation. (Pl.'s Suppl. Resp. at 4.) Plaintiff represents that no such orientation is provided to inmates at FDC SeaTac, or at least, that it has not existed for some time. (*Id.*)

REPORT AND RECOMMENDATION - 18

Where material facts are disputed with regard to an inmate's failure to exhaust, "summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Albino*, 747 F.3d at 1166. This Court finds that genuine issues of material fact exist precluding summary judgment given the parties' conflicting evidence as to the effective availability of the BOP's Administrative Remedy Program at FDC SeaTac for Plaintiff. Accordingly, Defendants have failed to meet their burden to demonstrate that Plaintiff failed to fully exhaust his available administrative remedies as to the claims contained in his third amended complaint, and therefore, Defendants' Motion should be denied.

### IV.   CONCLUSION

Based on the foregoing, the Court recommends that: (1) Defendants' Motion for Joinder (dkt. # 68) be GRANTED; (2) Plaintiff's Motion (dkt. # 63) be DENIED; and (3) Defendants' Motion (dkt. # 59) be DENIED. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 2, 2023**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John H. Chun.

Dated this 8th day of May, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20